MAZE, JUDGE:
*860 The University of Kentucky (the University) appeals from an Opinion and Order by the Fayette Circuit Court which affirmed an opinion by the Attorney General on an Open Records Act request by Lexington H-L Services, Inc. d/b/a the Lexington Herald Leader (the Herald-Leader). The University argues that certain audit records were exempt from disclosure under the Act because they were preliminary and not incorporated into its final action, and because they were protected by the attorney-client privilege or the work-product doctrine. We find that the circuit court correctly found that the records were not exempt from disclosure under the Open Records Act. Hence, we affirm.
I. Facts and Procedural History
The relevant facts of this action are not in dispute. In the summer of 2013, the University pursued an affiliation with the Appalachian Heart Center in Hazard, Kentucky ("the Clinic"). Under the terms of the affiliation, the University would purchase the Clinic's assets and enter into professional and adjunct medical facility staff agreements with the cardiologists. Prior to the acquisition, the University sought an independent valuation of the agreements with the physicians, and independent reviews of the care provided by the physicians and of the Clinic's operations and revenue.
Approximately a year after the acquisition, the University received two complaints concerning treatment practices at the Clinic. In response to these complaints, the University directed an audit of the physicians' medical documentation and the billing for their services. Those records were ultimately provided to the University's Chief Medical Compliance Officer and its General Counsel.
The audits revealed that the Clinic's medical record documentation was inadequate and likely resulted in overpayments. Rather than determining the precise amount of the overpayments, the University elected to refund all payments received for the period in question. The University subsequently terminated its affiliation with the Clinic. At a May 2, 2016, dinner meeting, the University's outside counsel presented a summary of this information to the University's Board of Trustees.
Upon learning of the information provided at the dinner meeting, the Herald-Leader requested a copy of the audit performed in response to the University's description of the problems that were uncovered at the Clinic. The Herald-Leader also requested a copy of the agenda and the PowerPoint presentation shown at the dinner meeting. The University denied these requests.
On June 7, 2016, the Herald-Leader sought the Kentucky Attorney General's review of the University's failure to produce the documents. The Herald-Leader also sought review of the University's failure to prepare an agenda or to keep minutes of the dinner. The University refused *861 to grant the Attorney General's office access to the materials in camera, taking the position that it may be considered a waiver of its claims of privilege.
On August 31, 2016, the Attorney General's office issued an opinion on the Herald-Leader's Open-Records Request. In re: Lexington Herald Leader/University of Kentucky , 16-ORD-193, 2016 WL 4607945 (2016) (A. Beshear, A.G.). The Attorney General held that the audit records were not preliminary and, therefore, were not exempt from disclosure under the Act. In a separate opinion, the Attorney General concluded that: (1) the University violated the requirements of Kentucky Revised Statute (KRS) 61.835 by not creating minutes of the dinner meeting; (2) the Board of Trustees' discussion at the dinner meeting with the outside counsel was not privileged; (3) the University was required to create minutes that "reflect the substance" of that discussion; (4) even if the Board of Trustee's discussion with counsel was privileged, the privilege is not an exception to the Open Meetings Act unless the discussion concerned actual proposed or pending litigation per KRS 61.810(1)(c). In re: Lexington Herald-Leader/University of Kentucky , 16-OMD-154 (2016) (A. Beshear, A.G.).
The University brought an appeal from both opinions, and the matters were consolidated into the current action. The circuit court directed the University to provide the documents at issue for an in camera review. There were three categories of documents at issue. The first category consists of documents relating to the audit initiated by the University's Medical Chief Compliance Officer in August 2014. The second category consisted of the PowerPoint presentation presented by outside counsel at the May 2, 2016, dinner meeting. The third category consisted of the unredacted invoices by outside counsel to the University of Kentucky from April 2, 2015, through May 31, 2016. Only the documents in the first category are at issue in this appeal.
In pertinent part, the circuit court concluded that the audit documents, excluding any patient records or identifying information, were subject to disclosure under the Open Records Act. The court first found that the audit records ceased to be preliminary in nature after the University took its final action of refunding the payments received during the period in question. The court further found that the audit records were not prepared for the sole purpose of rendering legal advice or in anticipation of litigation. Consequently, the court concluded that the records were not exempt from disclosure under the attorney-client privilege or work-product doctrine.[1] The University now appeals from this order.
II. Standard of Review
In City of Fort Thomas v. Cincinnati Enquirer , 406 S.W.3d 842 (Ky. 2013), the Kentucky Supreme Court set out the process for review of an Open Records Act request.
To begin, it is helpful to observe that when an agency denies an ORA request, the requester has two ways to challenge the denial. He or she may, under KRS 61.882, file an original action in the Circuit Court seeking injunctive and/or other appropriate relief. Alternatively, under KRS 61.880, he or she may, as was done in this case, ask the Attorney General to review the matter. Once the Attorney General renders a decision either party then has thirty days within which *862 to bring an action pursuant to KRS 61.882(3) in the Circuit Court. Although the statutes refer to this second type of Circuit Court proceeding as an "appeal" of the Attorney General's decision, it is an "appeal" only in the sense that if a Circuit Court action is not filed within the thirty-day limitations period, the Attorney General's decision becomes binding on the parties and enforceable in court. Otherwise, this second sort of Circuit Court proceeding is an original action just like the first sort. The Circuit Court does not review and is not in any sense bound by the Attorney General's decision, nor is it limited to the "record" offered to the Attorney General. The agency, rather, bears the burden of proof, and what it must prove is that any decision to withhold responsive records was justified under the Act. Its proof may and often will include an outline, catalogue, or index of responsive records and an affidavit by a qualified person describing the contents of withheld records and explaining why they were withheld. The trial court may also hold a hearing if necessary, and the parties may request or the court on its own motion may require the in camera inspection of any withheld records. We review the trial court's factual findings for clear error, and issues concerning the construction of the ORA we review de novo.
Id. at 848-49 (cleaned up).[2]
The basic policy of the Open Records Act "is that free and open examination of public records is in the public interest ... even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.871. Consequently, the Act requires that all exceptions to production, statutory or otherwise, must be strictly construed. As noted, the burden of establishing that an exception applies rests upon the agency resisting disclosure. KRS 61.882(3).
III. Issues
A. Preliminary Status of Audit Records
The University raises three grounds why the audit records were not subject to disclosure under the Open Records Act. First, the University argues that the audit records were preliminary in that they were prepared as part of its ongoing efforts to ensure compliance with Federal and State Medicare requirements. The University correctly points out that KRS 61.878(1)(i) & (j) excludes from disclosure:
(i) Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;
(j) Preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended;
The University acknowledges the authority holding that preliminary records may lose that status once they are adopted into final agency action. Univ. of Kentucky v. Courier-Journal & Louisville Times Co. , 830 S.W.2d 373, 378 (Ky. 1992). However, the University contends that this authority is not consistent with the statutory text. We acknowledge the University's argument to preserve the issue for further review, but it is well established that this *863 Court is bound to follow precedents set by the Kentucky Supreme Court. Smith v. Vilvarajah , 57 S.W.3d 839, 841 (Ky. App. 2000). See also SCR [3] 1.030(8)(a).
In the alternative, the University argues that the audit documents retain their status as preliminary because they were never incorporated into a final agency action. The University agrees that its repayment of the charges found in the audit constituted a final action for purposes of the Open Records Act. However, the University takes the position that the audit records were not incorporated in that action. Rather, the University contends that the audit documents were part of its regular course of business to ensure the Clinic's compliance with applicable federal statutes and regulations. For this reason, the University maintains that it never adopted the audit records into its final action, and thus they retain their status as preliminary under the Act.
The University's position is novel, but we do not find any authority supporting it. Indeed, there is no dispute that the University took its final action based upon the information revealed during the audits. Records which are of an internal, preliminary and investigatory nature lose their exempt status once they are adopted by the agency as part of its action. Courier-Journal , 830 S.W.2d at 378. The Act does not require that an agency reference or incorporate specific documents in order for those records to be adopted into the final agency action. Rather, we agree with the Attorney General that preliminary records which form the basis for the agency's final action are subject to disclosure.
The University further urges that it has a need for clear and candid preliminary investigations such as the audit records, and that its work would be impeded if such records were later subject to disclosure. However, the General Assembly has clearly defined the public policy behind the Open Records Act, and we are not at liberty to interpret the Act in light of different public policy considerations. Therefore, we must agree with the circuit court that the preliminary-records exception does not apply in this case.
B. Attorney-Client Privilege
The University next argues that the audit records were protected by attorney-client privilege, as they were prepared for the benefit of counsel in the course of determining its legal obligations. As this presents a question of law, our standard of review is de novo and without deference to the decision of the circuit court. Hahn v. University of Louisville , 80 S.W.3d 771, 773 (Ky. App. 2001).
KRE [4] 503(b) defines the general rule of attorney-client privilege as follows:
A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
(2) Between the lawyer and a representative of the lawyer;
(3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
*864 (4) Between representatives of the client or between the client and a representative of the client; or
(5) Among lawyers and their representatives representing the same client.
KRE 503(a)(5) further provides that a communication is deemed
"confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
The application of the privilege turns on two questions. First, the statements must actually be confidential, meaning they are "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Collins v. Braden , 384 S.W.3d 154, 161 (Ky. 2012) (Quoting KRE 503(a)(5) ). Second, the statements must be made for the purpose of obtaining or furthering the rendition of legal services to the client. Id. (Citing KRE 503(b) ).
The University takes the position that its Chief Medical Compliance Officer directed that the audit be conducted in response to specific issues regarding the Clinic's compliance with laws and regulations. Since non-compliance with fraud and abuse laws can result in litigation, the University contends that the audit documents were prepared and compiled for its counsel to give sound and informed advice regarding that potential litigation. Finally, the University contends that the audit documents were prepared only to allow the Chief Medical Compliance Officer to render legal advice to the University, and thus were "confidential" for purposes of the attorney-client privilege.
However, the privilege "protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege and is triggered only by a client's request for legal, as contrasted with business, advice. Where the attorney acts merely as a business adviser the privilege is inapplicable." Lexington Pub. Library v. Clark , 90 S.W.3d 53, 60 (Ky. 2002) (Cleaned Up). In this case, the University asserts that its Chief Medical Compliance Officer directed the audit to ensure the Clinic's compliance with Federal and State Medicaid requirements.
However, the University does not suggest that the audits were prepared or conducted under the direction of either its inside or outside counsel. Likewise, the University does not contend that the audits were intended to be disclosed only to counsel for the purposes of preparing legal advice. Under the circumstances, we agree with the circuit court that the University failed to establish a claim of attorney-client privilege with respect to the audit documents.
C. Work-Product Doctrine
Finally, the University that the audit records were subject to the work-product doctrine. The doctrine, as defined under CR [5] 26.02(3), affords a qualified privilege from discovery for documents "prepared in anticipation of litigation or for trial" by that party's representative, which includes an attorney. The privilege may be available even where the attorney whose work product is sought does not represent a party in current litigation.
*865 O'Connell v. Cowan , 332 S.W.3d 34, 42 (Ky. 2010). However, the mere potential for litigation is not sufficient to place documents within the scope of the work-product doctrine. Frankfort Reg'l Med. Ctr. v. Shepherd , No. 2015-SC-000438-MR, 2016 WL 3376030, at *14 (Ky. 2016). Furthermore, documents which are primarily factual, non-opinion work product are subject to lesser protection than "core" work product, which includes the mental impressions, conclusions, opinions, or legal theories of an attorney. Id. at 42. (Citing Morrow v. Brown, Todd & Heyburn , 957 S.W.2d 722, 725 (Ky. 1997) ).
Here, the audit documents at issue were prepared in the course of the University's normal business oversight of the Clinic's operation, and only remotely in anticipation of potential litigation. In addition, the audit documents relate primarily to factual matters, rather than an attorney's impressions, conclusions or legal theories. Under the circumstances, we agree with the circuit court that the University failed to establish that the audit documents are subject to the work-product doctrine. Since the University failed to establish that the audit records were exempt from disclosure under the Open Records Act or other applicable law, the circuit court properly granted the Herald-Leader's request for production of those documents.
IV. Conclusion
Accordingly, we affirm the opinion and order of the Fayette Circuit Court. Once finality attaches to this opinion, the University shall produce the documents as directed by the circuit court.
ALL CONCUR.

The court separately found that PowerPoint presentation was subject to disclosure under the Open Records Act, but the attorney billing records were not. These rulings are not at issue in this appeal.

This opinion uses the (cleaned up) parenthetical to indicate that internal quotation marks, alterations, ellipses, and citations have been omitted from quotations. See, e.g. , United States v. Reyes , 866 F.3d 316, 321 (5th Cir. 2017) ; Smith v. Commonwealth , 520 S.W.3d 340, 354 (Ky. 2017) ; I.L. through Taylor v. Knox Cty. Bd. of Educ. , 257 F.Supp.3d 946, 960 (E.D. Tenn. 2017).

Kentucky Rules of the Supreme Court.

Kentucky Rules of Evidence.

Kentucky Rules of Civil Procedure.